IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>ENTERPRISE LEASING COMPANY OF FLORIDA, LLC and ENTERPRISE LEASING COMPANY OF ORLANDO, LLC,<br><br>Respondent. | )<br>)<br>)<br>) CIVIL ACTION NO.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

_____

**Application For An Order To Show Cause Why
Administrative Subpoenas Should Not Be Enforced and
Incorporated Memorandum of Law**

This is an action for enforcement of two subpoenas issued to Enterprise Leasing Company of Florida, LLC and Enterprise Leasing Company of Orlando, LLC (collectively "Enterprise" or "Respondents") pursuant to Subsections 7(a) and (b) of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 626(a), (b).

## I.  Jurisdiction

1.    Jurisdiction is conferred upon the court by Section 9 of the Federal Trade Commission Act of 1914, as amended, 15 U.S.C. § 49, incorporated in Section 9 of the Fair Labor Standards Act, as amended, 29 U.S.C. § 209, and, through that section, in Section 7(a) of the ADEA, 29 U.S.C. § 626(a).

2.    Applicant and Plaintiff, the Equal Employment Opportunity Commission ("EEOC"), is the federal agency charged with the administration, interpretation, and enforcement of the ADEA, including the investigation of charges of unlawful employment practices, and is authorized to bring this action pursuant to Section 7(a) of the ADEA, 29 U.S.C. § 626(a).

3.    The Respondent, Enterprise Leasing Company of Florida, LLC, is an employer doing business in the State of Florida with an office in, among other locations, Tampa, Florida.

1

4.     The Respondent, Enterprise Leasing Company of Orlando, LLC, is an employer doing business in the State of Florida with an office in, among other locations, Orlando, Florida.

5.     The subpoenas at issue in this action were issued by the EEOC's Tampa office and require sending the relevant documents to an EEOC investigator based in its Tampa, Florida office.

## II.    Factual Background

6.     On May 18, 2022, EEOC initiated two directed investigations against Respondent Enterprise Leasing Company of Florida, LLC and Enterprise Leasing Company of Orlando, LLC respectively. [1]  *See* Ex. 1, Declaration of Evangeline Hawthorne, ¶¶ 4-5.

7.     This means that the investigations were initiated by the EEOC through two letters signed by EEOC Tampa Field Office Director Evangeline Hawthorne.  *See* Ex. 1. ¶ 6.  The investigations are then assigned a charge number.  *See* Ex. 1. ¶¶ 7-8.  *See also*

https://www.eeoc.gov/commissioner-charges-and-directed-investigations

---

[1] Notably, EEOC is conducting two directed investigation of Respondents pursuant to its statutory authority to investigate possible age discrimination under the ADEA. *See* 29 U.S.C. § 626 (EEOC "shall have the power to make investigations"); 29 C.F.R. § 1626.4 ("The Commission may, on its own initiative, conduct investigations of employers, employment agencies and labor organizations, in accordance with the powers vested in it pursuant to sections 6 and 7 of the Act [29 U.S.C. §§ 625, 626].").

(explaining generally Commissioner's charges and directed investigations).

8.      EEOC notified each Respondent that the Commission was investigating whether the Respondents are in compliance with the ADEA.  *See* Ex. 1 ¶ 9; Ex. 3 (Letter to Enterprise Leasing Company of Florida, LLC); Ex. 4 (Letter to Enterprise Leasing Company of Orlando, LLC).

9.      EEOC's investigation of Respondents is not limited to a single location, and instead is focused broadly on Respondents' compliance with the ADEA.  *See* Ex. 1 ¶ 9.  EEOC's investigation includes whether Respondents have engaged in discriminatory hiring practices under the ADEA with respect to the Management Trainee position in Florida. *See* Ex. 5 (Request for Information to Enterprise Leasing Company of Florida, LLC); Ex. 6 (Request for Information to Enterprise Leasing Company of Orlando, LLC).

10.      As part of its investigation, the EEOC issued requests for information to Respondents on May 18, 2022.  *See* Ex. 1 ¶ 10, Ex. 5, Ex. 6.  EEOC requested that Respondents provide the following information by June 3, 2022:

1. Electronic applicant data for all applicants to the Management Trainee positions from January 1, 2019 to December 31, 2021, including all fields listed on Respondent's Employment Applications and all fields that track the applicant through the application process.

2. Identify each entity that employs Respondent's Management Trainees within the state of Florida (e.g., Enterprise Leasing of Florida).

3. For each entity identified in response to II.1, identify its number of employees as of December 2021.

4. State the starting salary for Respondent's Management Trainees (if not uniform, a range or average is acceptable).

5. Identify whether Respondent's Management Trainee position is a full time position and, if not, how many hours per week managers in training work (if not set, a range or average is acceptable).

*See* Ex. 1 ¶ 11; Ex. 5, Ex. 6.

11.  Because Respondents did not provide the requested information by June 3, 2022, EEOC sent Respondents a letter on June 6, 2022.  *See* Ex. 1 ¶¶ 12-13, Ex. 7 (Pre-Subpoena Letters to Respondents). Notably, EEOC gave Respondents until June 13, 2022, to provide the requested data and advised Respondents that EEOC could issue a subpoena for the information.  *See* Ex. 1 ¶ 13; Ex. 7.  Respondents did not provide the requested data and information by June 13, 2022.  *See* Ex. 1 ¶ 14.

4

12.     On June 17, 2022, pursuant to its authority under Section

7(a) of the ADEA, 29 U.S.C. § 626(a) (incorporating 29 U.S.C. § 209,

which, in turn, incorporates 15 U.S.C. § 49), the EEOC issued to the

Respondents Subpoena Nos. MIA22-06 and MIA22-07 (the "Subpoenas"),

which were duly served on the Respondents.  *See* Ex. 1 ¶ 15; Ex. 8

(Subpoena to Enterprise Leasing Company of Florida, LLC); Ex. 9

(Subpoena to Enterprise Leasing Company of Orlando, LLC).

13.     The Subpoenas directed Respondents to produce the

documents by June 27, 2022.  *See* Ex. 1 ¶ 16, Ex. 8, Ex. 9.  Thereafter, on

June 27, 2022, Respondents objected to the Subpoenas in their entirety.

*See* Ex. 1 ¶ 17; Ex. 10 (Objections to Subpoena by Enterprise Leasing

Company of Florida, LLC); Ex. 11 (Objections to Subpoena by Enterprise

Leasing Company of Orlando, LLC).

14.     On August 10, 2022, a Commission attorney contacted the

Respondents via email and telephone to discuss the Subpoenas with

Respondents' counsel.  EEOC Counsel explained:

> As you are aware, EEOC is investigating broadly whether
> Respondents are in compliance with the ADEA.  In
> connection with that investigation, EEOC has requested
> electronic applicant data, as well as other information.  This
> data is necessary for EEOC to determine whether
> Respondents have an intentional pattern or practice of

failing to hire applicants in the protected age group in
Florida.

*See* Ex. 2 (Email to Respondents' Counsel).  EEOC's Counsel and

Respondents' Counsel discussed the Subpoenas but were not able to

reach a resolution.  To date, Respondents have failed to comply with the

Subpoenas.

**III**.  **Argument**

The Respondents have no valid defense for failing to comply with

the EEOC's subpoenas. EEOC subpoena-enforcement proceedings are

summary in nature and involve only limited judicial review. *EEOC v.*

*Tire Kingdom, Inc.*, 80 F.3d 449, 450 (11th Cir. 1996); *see also United*

*States v. Vici Marketing, LLC*, Case No. 8:15-cv-444-T-33TGW, 2020 WL

1677335, at *2 (M.D. Fla. Apr. 6, 2020) (noting that the Court's role is

"sharply limited" in a subpoena enforcement action).  To successfully

petition a court to enforce an administrative subpoena, the Commission

needs only to show that 1) the investigation is within the agency's

authority; 2) the demand is not too indefinite; and 3) the information

sought is relevant to the investigation. *United States v. Morton Salt Co.*,

338 U.S. 632 (1950); *see also Tire Kingdom, Inc.*, 80 F.3d at 450 (citing

*United States v. Fla. Azalea Specialists*, 19 F.3d 620, 622-23 (11th Cir.

1994).  The *Morton Salt* standard is premised on the concept that "an administrative agency . . . can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Morton Salt*, 338 U.S. at 642-43.  Here, as set forth in detail below, EEOC meets each of the criteria set forth in *Morton Salt*.

### A.   EEOC's investigation is valid and within the agency's authority.

First, Congress has authorized the EEOC to make investigations under the ADEA. 29 U.S.C. § 626(a). *See also Tire Kingdom, Inc.*, 80 F.3d at 451(enforcing EEOC subpoena, holding that EEOC has broad authority to investigate under the ADEA, and recognizing that EEOC's authority is not dependent upon a charge of discrimination); *EEOC v. Aerotek, Inc.*, 815 F.3d 328, 333 (7th Cir. 2016) (holding that district court properly ordered company to comply with EEOC's subpoena issued as part of a directed investigation). Here, pursuant to two directed investigations, the EEOC is investigating whether Respondents are in compliance with the ADEA. Specifically, the investigations seek to determine if Respondents have engaged in a pattern or practice of hiring discrimination with respect to the Management Trainee position from January 2019 to the

7

present.[2]  Because this investigation is within the agency's statutory authority, the first prong of the test has been satisfied.

### B.    The Subpoenas are not indefinite.

Next, the Court must determine whether the Subpoenas "contain a sufficiently definite description of the documents so that a person can in good faith understand which documents must be produced." *Resolution Trust Corp v. Greif*, 906 F. Supp. 1457, 1465 (D. Kan. 1995).  Here, EEOC's requests for documents and information in the Subpoena are sufficiently definite to be enforceable.  Indeed, Respondents did not object to the Subpoenas on the basis that they indefinite, and Enterprise Leasing Company of Florida, LLC has provided some of the requested applicant data for the Tampa, FL area in response to an identical request in a different investigation.  As such, Respondents understand what information is being requested in the Subpoenas.

### C.    The information sought is relevant to EEOC's investigations.

Finally, the information sought by the Subpoenas is relevant to the EEOC's investigations. The concept of relevancy during an EEOC

---

[2] As recognized by the Eleventh Circuit in *Tire Kingdom*, the statute of limitations does not apply to ADEA actions brought by the EEOC.  *See Tire Kingdom, Inc.*, 80 F.3d at 451, n.1.

investigation under the ADEA is broader than is that concept during litigation. By incorporation, Section 7(a) of the ADEA grants the EEOC access to records "relating to any matter under investigation." 15 U.S.C. § 49 (incorporated in Section 9 of the Fair Labor Standards Act (FLSA), as amended, 29 U.S.C. § 209, and, through that section, in Section 7(a) of the ADEA, 29 U.S.C. § 626(a)). The statute grants the EEOC "broad investigatory authority, independent of the proper filing of an employee charge." *EEOC v. Am. & Efird Mills, Inc.*, 964 F.2d 300, 303 (4th Cir. 1992). When reviewing this broad investigatory authority, courts will enforce an administrative subpoena "if the material subpoenaed touches a matter under investigation." *EEOC v. Elrod*, 674 F.2d 601, 613 (7th Cir. 1982) (cite and internal quotation marks omitted). *See also McLane Co., Inc. v. EEOC*, 581 U.S. 72, 137 S. Ct. 1159, 1164-65 (2017) (recognizing broad and generous definition of relevance in subpoena enforcement action).

Here, EEOC notified Respondents that it was broadly investigating whether Respondents are in compliance with the ADEA. Specifically, EEOC has requested electronic applicant data from the Respondents in order to conduct a statistical analysis of Respondents' hiring practices. EEOC seeks to determine whether Respondents have an intentional

pattern or practice of under-hiring applicants in the protected age group (ages 40 and older) for the Management Trainee position in Florida.  In addition, the remaining information requested, including (1) names of entities; (2) number of employees; (3) starting salary; and (4) hours worked, is relevant and necessary for EEOC to determine the potential scope of any violations and possible damages.   Requesting this type of information is clearly within EEOC's authority of investigating possible age discrimination, and if reasonable cause is found, conciliating on behalf of any potential class of victims.  As such, EEOC has met all requirements for enforcement of its Subpoenas.

## III.   Respondents' Objections to the Subpoenas

Respondents raised a number of objections to EEOC's Subpoenas.  EEOC will address each objection in turn.

### A.   Respondents Cannot Unilaterally Limit the Scope of EEOC's Investigations to a particular legal entity or geographic region.

First, Respondents argue that EEOC's investigation should be limited to a single division (Tampa) of a single entity (Enterprise Leasing Company of Florida, LLC).  Indeed, Respondent Leasing Company of Florida suggests EEOC can only investigate its Tampa division as the only employee-initiated complaint came from that

10

division; likewise, Respondent Leasing Company of Orlando suggests that EEOC cannot investigate it as there are no employee-initiated charges against it.  EEOC's investigative authority, however, is not dependent upon or limited by the existence of a charge.  Indeed, the ADEA does not set forth any special procedures that the EEOC must follow before it may issue a subpoena or seek judicial enforcement of such a subpoena. As set forth in *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), "the EEOC's role in combating age discrimination is not dependent on the filing of a charge." *Id.* at 28; *see also Tire Kingdom, Inc.*, 80 F.3d at 451-52 & n.2; *EEOC v. American & Effird Mills, Inc.*, 964 F.2d 300, 303 (4th Cir. 1992) ("Nothing in [the ADEA] hinges EEOC authority on the filing of a valid employee charge."); *EEOC v. Johnson & Higgins, Inc.*, 91 F.3d 1529, 1537 (2d Cir. 1996) (holding that EEOC had authority to pursue ADEA claims even though employees had not filed charges). Thus, EEOC can investigate an employer even if no charge of discrimination is ever filed.

Here, EEOC commenced directed investigations against both Enterprise Leasing Company of Florida, LLC and Enterprise Leasing Company of Orlando LLC, and EEOC is investigating whether

11

Respondents are in compliance with the ADEA.  Further, the

Commission has exercised its discretion to investigate the

Respondents compliance with the ADEA broadly, and has not limited

its investigation to one particular division or geographic region.

Thus, the absence of employee-filed charges is irrelevant to the

Court's determination of this subpoena enforcement action.

### B.    Respondents Cannot Challenge EEOC's Directed Investigations.

Respondents next challenge EEOC's Subpoenas by arguing that

the agency has not shared *why* it is investigating, or what the *factual*

*basis* is for its investigation.  In other words, Respondents appear to

challenge EEOC's basis for initiating two directed investigations

against Respondents in the first instance.  Respondents have not

cited to any authority, however, that would suggest it can challenge

EEOC's decision to investigate a particular employer.  Indeed, the

law is clear that "the Commission may conduct investigations on its

own initiative.  29 C.F.R. § 1626.4; *see also* 29 C.F.R. § 1626.13

("Because the Commission has independent investigative authority,

see § 1626.4, it may continue any investigation and may secure relief

for all affected persons notwithstanding a request by a charging party

to withdraw a charge."). Indeed, EEOC "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Morton Salt*, 338 U.S. at 642-43; *Aerotek, Inc.*, 815 F.3d at 333 (same).  As the Supreme Court has explained, it is not for the courts to examine whether a charge is well founded or verifiable.  *Univ. of Pa. v. EEOC*, 493 U.S. 182, 191 (1990) (citing *EEOC v. Shell Oil Co.*, 466 U.S. 54, 72 n.26 (1984); *see also United States v. Feaster*, 376 F.2d 147, 149 (5th Cir. 1967) ("In subpoena cases the Supreme Court has rejected claims that the court must satisfy itself that probable cause exists for the agency's contention that the subject of the subpoena is covered by the statute; the only judicial inquiry to be made in enforcing an agency subpoena is whether the evidence sought is 'plainly incompetent or irrelevant to any lawful purpose' of the agency."); *United States v. Whispering Oaks Residential Care Facility, LLC*, 673 F.3d 813, 818 (8th Cir. 2012) ("Whispering Oaks cites no legal authority for requiring the Government to justify its administrative subpoenas by revealing the identity of any informants, the information those informants may have provided, or any other facts revealing the motives behind a lawful investigation.").  Because EEOC can investigate simply to confirm that

13

Respondents are not violating the law, Respondents arguments regarding the basis (or purported lack thereof) for EEOC's directed investigations are without merit.

In any event, EEOC has requested information specifically to determine whether Respondents are violating the law with respect to hiring in the Management Trainee position in Florida.  Respondents Enterprise Leasing Company of Orlando, LLC and Enterprise Leasing Company of Florida, LLC use the same general application criteria, application materials, and application process.  Application materials used by both Respondents, including certain interview questions, reflect an assumption that applicants will be recent college graduates:

- You attended (_____) College/University, and your major was (_____), why did you decide on that major? What did you think you were going to do with that major after graduation?

- Did you work while you were in school? During the academic school year? How many hours a week did you work while at school?

- Were you involved in any extracurricular activities? Any Clubs or Organizations?

- Looking back at your college experience, if there was something you could have done differently, what would it have been?

Likewise, on a national level, Enterprise's recruiting efforts reflect an emphasis on recent college graduates, including Enterprises' nationwide partnership with Athlete Network, which gives Enterprise "access to more than 500 university athletic departments and enables it to network with current and former student athletes throughout the country." *See* https://www.enterpriseholdings.com/en/press-archive/2017/07/enterprise-teaming-up-with-athlete-network-for-fifth-straight-year.html.  Indeed, Enterprise is well known, on a national level, as an employer of recent college graduates.  *See* Enterprise Continues Commitment to College Hiring, at https://www.travelpulse.com/news/ car-rental-and-rail/enterprise-continues-commitment-to-college-hiring.html; Amidst Competitive Job Market, Enterprise Rent-A-Car to Hire 8,500 College Graduates in 2019, at  https://www.enterpriseholdings.com/en/press-archive/2019/05/amidst-competitive-job-market-enterprise-rent-a-car-to-hire-college-graduates-in.html.  Finally, the limited data produced by Enterprise Leasing Company of Florida, LLC, limited to the Tampa division, indicates that it hired workers ages 40 and over into the Management Trainee position at substantially lower rates compared to workers under age 40.

In summary, EEOC is investigating Respondents under the ADEA, which is clearly within the scope of EEOC's authority.  EEOC seeks to determine whether there is age discrimination in hiring with regards to the Manager Trainee position, and if so, to determine the extent and scope of that discrimination.  Because EEOC's Subpoenas seek information relevant to a lawful purpose of the Commission, the Court should enforce the Subpoenas.

### C.   EEOC's Subpoenas Cover a Reasonable Timeframe

In the Subpoenas, EEOC seeks application data for a period of three years, from January 2019 through December 2021.  Although Respondents suggest this timeframe is unreasonable, the EEOC's broad discretion extends to establishing an appropriate time frame for its investigation, and courts have upheld EEOC's requests for information covering a three-year period. *See EEOC v. KB Staffing, LLC*, No. 8:14-mc-41-T-30AEP, 2014 WL 12628619, *3-4 (M.D. Fla. Aug. 28, 2014) (noting EEOC's crucial role in investigating systemic discrimination and ordering production of applicant questionnaires for a three year period); *EEOC v. Randstad*, 685 F.3d 433, 451 (4th Cir. 2012) (concluding that "five-year scope of the subpoena was not an unreasonable exercise of the

16

EEOC's discretion"); *EEOC v. Roadway Express, Inc.*, 261 F.3d 634, 641-42 (6th Cir. 2001) (allowing EEOC to seek hiring and promotional information for a five year period and noting that comparative data is essential to proving discrimination). In the instant case, the EEOC seeks documents for a three-year period in order to determine the extent and scope of potential age discrimination.  Three years is particularly appropriate in the context of the ADEA, where any potential lawsuit would not be limited by a statute of limitations.  *Tire Kingdom*, 80 F.3d at 451 n.1.  Moreover, the EEOC seeks a large enough sample of applications from each entity to be able to draw meaningful conclusions. *See EEOC v. H.S. Camp & Sons, Inc.*, 542 F. Supp. 411, 433 (M.D. Fla. 1982) (internal citations omitted) ("[S]tatistical evidence is unreliable where . . . the sample size selected is small.").  Thus, the information is relevant to the investigations and the Subpoenas should be enforced.

### D.   Compliance with the Subpoenas Would Not Create an Undue Burden on Respondents.

Respondents also suggest that the request is onerous in terms of the categories of electronic application data EEOC is requesting. Respondents' objections do not articulate, at all, why producing the requested electronic data would be difficult, onerous, or burdensome.

*Managed Care Solutions, Inc. v. Essent Healthcare, Inc.*, 2010 WL
3419420, *3 (S.D. Fla. Aug. 27, 2010) ("As the party moving to quash
the subpoena, SSI must show the subpoena subjects it to undue
burden.").  Respondents bare allegations of burden—without any
articulation of hours, time, or costs involved, are simply insufficient.
Further, Enterprise Leasing Company of Florida, LLC produced some of
the requested electronic application data for the Tampa division,
suggesting that it is able to pull the data from its online application
system and produce it in an electronic format to EEOC.  As such,
Respondents have not demonstrated that the Subpoenas impose an
undue burden.

### E.    Other Objections by Respondents

Respondents also object to the Subpoenas by stating that disparate
impact claims under the ADEA are not cognizable.  As set forth in *EEOC
v. John Wieland Home & Neighborhoods, Inc.*, No. 1:06-CV-1804-WSD,
2006 WL 8453159, at *5 (N.D. Ga. Sept. 25, 2006), the role of the district
court in a subpoena enforcement action is not to examine potential
defenses on the underlying merits.  *See also EEOC v. Kloster Cruise Ltd.*,
939 F.2d 920, 922 (11th Cir. 1991) ("a subpoena enforcement proceeding is
not the proper forum in which to litigate the question of coverage under a

particular statute.").  In any event, EEOC has repeatedly advised Respondents that the agency is <u>not</u> investigating a disparate impact claim; rather, EEOC is investigating whether Respondents have engaged in intentional discrimination.  *See EEOC v. Darden Restaurants, Inc.*, 143 F. Supp. 3d 1274, 1279-82 (S.D. Fla. Nov. 9, 2015) (recognizing that EEOC can pursue a pattern-or-practice claim of intentional discriminatory hiring under the ADEA).  For these reasons, Respondents' objection is without merit.

Respondents also suggest that applicant data is not relevant because the applications themselves do not have ages.  However, once EEOC learns the identities of individuals that applied for employment with Respondents (through the electronic applicant data), EEOC can determine applicants' ages by using a third-party database to determine date of birth.

## IV.   Conclusion

For the foregoing reasons, the Court should enforce the EEOC's subpoena. The subpoena seeks information relevant to a valid investigation under the ADEA. Further, the Respondents have not established that complying with the subpoena would be unduly burdensome.

WHEREFORE, the Equal Employment Opportunity Commission prays:

a) That the Court issue an Order directing the Respondents to appear before this Court, and to show cause, if there be any, why an Order should not be issued directing the Respondents to comply with the Subpoenas;

b) That, upon return of the Order to Show Cause, an Order issue directing the Respondents to comply with the Subpoenas; and

c) That the Equal Employment Opportunity Commission be granted its costs and such further relief as may be necessary and appropriate.

Dated August 29, 2022

Respectfully submitted

U.S. EQUAL EMPLOYMENT
OPPORTUNITY
COMMISSION

GWENDOLYN YOUNG
REAMS
Acting General Counsel
U.S. EQUAL EMPLOYMENT
OPPORTUNITY
COMMISSION
131 M Street, N.E.

Washington, DC 20507

ROBERT E. WEISBERG
Regional Attorney
Florida Bar No. 285676

s/Kristen M. Foslid
KRISTEN M. FOSLID
Supervisory Trial Attorney
Florida Bar No. 0688681
U.S. Equal Employment
Opportunity Commission
Miami District Office
Miami Tower
100 S.E. 2nd Street, Suite
1500
Miami, Florida 33131
(786) 648-5835
kristen.foslid@eeoc.gov

21